# Exhibit 01

Electronically FILED by Superior Court of California, County of Riverside on 06/11/2025 08:54 AM
Case Number CVRI2503476 0000131939892 - Jason B. Galkin, Executive Officer/Clerk of the Court By Viviana Gonzalez, Clerk

1   Sara D. Beller (Bar No. 316210)
2   **DOLMAN LAW GROUP**
    **ACCIDENT INJURY LAWYERS, PA**
3   800 N. Belcher Rd.
    Clearwater, FL 33765
4   Telephone: (727) 451-6900
    Facsimile: (727) 451-6907
5   Email:  sara.beller@dolmanlaw.com

6
7   *Additional Counsel in Signature Block*

8

9

10

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12              **FOR THE COUNTY OF RIVERSIDE**

13  JOSHUA RISLEY,                          Case No.: C V R I 2 5 0 3 4 7 6

14                          Plaintiff(s),   **COMPLAINT FOR DAMAGES:**
        vs.                                    1. **Negligence**
15  THE CHURCH OF JESUS CHRIST OF              2. **Negligent Supervision of A Minor**
16  LATTER-DAY SAINTS AND THE                  3. **Sexual Abuse of a Minor**
    CORPORATION OF THE PRESIDENT OF THE        4. **Negligent Hiring, Supervision and**
17  CHURCH OF LATTER-DAY SAINTS                   **Retention**
                        Defendant(s).          5. **Negligent Failure to Warn, Train, or**
18                                                **Educate Plaintiff**
19                                             6. **Breach of Mandatory Duty**

20
                                            )
21  _____

22
23          Plaintiff, Joshua Risley, of and for his causes of action against Defendants, and each of them,
24  complaints and alleges as follows:

25                          **<u>INTRODUCTION</u>**

26      1.  This case involves egregious sexual, physical, and emotional abuse of a child.

27

28
                                    - 1 -
                            COMPLAINT FOR DAMAGES

2.  In or around 1996 to 1998, Plaintiff Joshua Risley, was sexually assaulted, on numerous instances, while under Defendants' care during one of Defendants' organized Church activities. The abuse was perpetrated by an adult member of Defendants' Church and involved the forced masturbation, oral sex and groping of Plaintiff's genitals under his clothing by Henry "Skip" DeArmaund as well as the forced groping of the supervising church member's genitals by Henry "Skip" DeArmaud.

## PARTIES

3.  Plaintiff Joshua Risley ("Plaintiff") is an adult male under the age of forty at the time of this filing and a resident of the County of Douglas, State of Oregon.

4.  As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme misconduct by a Perpetrator, Henry "Skip" DeArmoud ("DeArmaud").

5.  Defendant The Church of Jesus Christ of Latter Day Saints ("the Church") is and was at all relevant times mentioned herein, the religious entity, located at 225 Mildred St. Perris, CA 92571 through which DeArmaud held and used his position as a youth leader, to groom and sexually abuse Plaintiff. The Church is a corporation duly organized and operating pursuant to the laws of the State of Utah. The Church operates wards, meeting houses congregations, temples, and other houses of worship within the State of California, and other states. The Church does business with and conducts continuous and systemic activities in California. The Church's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. THE CHURCH is registered to do business in California, and the presiding Bishop serves at the pleasure of and subject to the direct and absolute control of THE CHURCH. The divisions of the Church are the Wards, stakes, and areas. THE CHURCH is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

6.  Defendant The Corporation Of The President Of The Church Of Latter-Day Saints ("the Corporation") is and was at all relevant times mentioned herein, a religious entity and subsidiary of the Church. The Corporation is a corporation duly organized, and operating pursuant to the laws of, the Church. The Corporation is a corporation duly organized, and operating pursuant to the laws of,

The Corporation operates properties, temples, and other houses of worship within the State of California. The Corporation does business with and conducts continuous and systemic activities in California. The Corporation's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.

7.    The Corporation is registered to do business in California, and operates, maintains, and manages The Church's properties at the direction of and under the control of the Church. The Corporation is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

8.    The Defendants each assumed responsibility for the wellbeing of their members, prospective members, and invitees, whether as clergy or volunteers appointed by the Church. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday School, and Primary School teacher; Defendants and their agents placed individuals in positions of responsibility and authority over Church members, prospective members and invitees. As a result, they each had a special relationship with members, prospective members, and invitees of the congregation, including the minor Plaintiff. This relationship gave rise to a duty to protect members, prospective members, and invitees of the congregation, including the minor Plaintiff from a foreseeable risk of harm. At all relevant times, the Defendants assumed special responsibilities towards their members, prospective members, and invitees including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members, prospective members, and invitees from the harm they might inflict.

9.    Defendants' income comes from member tithes which are turned over to the Church for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes, and areas. The Church does not provide information about their finances to their members or the public. Upon information and belief, the Church receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, the Church owns financial assets and real estate in excess of two hundred billion dollars.

COMPLAINT FOR DAMAGES

10. Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

11. All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate business Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and approved of each and all said acts, conduct or nonfeasance of their co-employees, employees and agents.

12. This is an action for childhood sexual abuse brought pursuant to Code of Civil Procedure section 340.1, subdivision (a)-(d) and any other applicable statute. The misconduct described herein occurred in or around 1996-1998 when Plaintiff, was a minor, 11 years of age. Plaintiff is under the age of forty at the time of filing.

13. Moreover, as stated herein and at all times relevant, Defendants, each of them, knew or had reason to know, or were otherwise on notice, of the misconduct alleged herein, which created the risk of childhood sexual assault by an employee, volunteer, representative, or agent, and the person or entity failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault. As Plaintiff is less than 40 years old at the

1    time of filing, no requirement under subdivision (e) through (f) is required. As such, Plaintiff's

2    complaint is timely.

3        14. DeArmaud was an employee, agent, servant, member, and/or volunteer of Defendants when

4    he sexually assaulted the Plaintiff—then a minor.

5        15. During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants

6    supervised and exercised control over Plaintiff's abuser.

7        16. Each Defendant is responsible, in some manner, for the events and happenings herein

8    referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

9                                   **JURISDICTION AND VENUE**

10       17. This Court has personal jurisdiction over Defendants because each Defendant systematically

11   and continually has conducted and continues to conduct business in Riverside County, and the State

12   of California.

13       18. Alternatively, jurisdiction also lies in California as Plaintiff was subject to multiple acts of

14   sexual assault and/or injury in the State of California by DeArmaud who was acting in his role as

15   an employee, agent, servant, member, and/or volunteer of Defendants at the time he sexually

16   assaulted the Plaintiff—then a minor. *See e.g., Doe v. Damron*, 70 Cal. App. 5th 684 (Ct. App.

17   2021) (visitors to a state should reasonably expect that, if they assault someone in their travels, they

18   may have to answer for their conduct in the state's courts; jurisdiction in California found even when

19   alleged tort occurred during a single, brief visit by non-resident to the forum state).

20       19. In addition to the wrongful acts perpetrated on Plaintiff, and prior to the same,

21   Defendants have been subjected to multiple prior similar lawsuits in California involving sexual

22   abuse and/or sexual assault claims involving minor children.

23       20. Defendants minimum contacts with the State of California are such that traditional

24   notions of fair play and substantial justice have been satisfied, and they are also such that at all

25   times Defendants should have reasonably anticipated that Defendants' wrongful and/or tortuous

26   conduct would cause them to be hailed into California Court.

27       21. The subject incidents upon which this Complaint are based occurred in the State of

28

                                     - 5 -
                         COMPLAINT FOR DAMAGES

California, and upon information and belief, they occurred in multiple counties within the state of California, including but not limited to Riverside County, California. As such, venue is proper in the Riverside County Superior Court of California.

## FACTUAL ALLEGATIONS

### *(Common to All Causes of Action)*

22. The Church is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.

23. The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

24. Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California.

25. The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing, and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

26. Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.  In California, there are an estimated 147 Stakes.

27. Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children. Bishops are also responsible for the Ward's finances and record keeping.

28. Plaintiff was a minor child, active member, and invitee of Defendants' Church, in Perris, California DeArmaud was a church leader of Church and used his position of authority therein to groom and sexually abuse Plaintiff. Abuse by DeArmaud began when Plaintiff was just 11 years old. Intent on manipulating Plaintiff's emotions and taking advantage of his innocence, so that he eventually could sexually abuse him, DeArmaud exploited. Plaintiff's fragile mental state to cause him extreme fear, anxiety, and confusion thereby coercing and manipulating Plaintiff to gain further power and control over him. All tactics employed for abuse purposes occurred during the most vulnerable time of Plaintiff's life. DeArmaud was also his step-grandfather.

29. Eventually, DeArmaud initiated extreme sexual abuse of Plaintiff. Plaintiff endured ongoing, humiliating events of child molestation by DeArmaud, a figure of religious authority, whom Plaintiff had been taught to trust with his life and well-being and had never been given the choice but to trust.

30. Plaintiff is informed and believes and thereupon alleges, that, at all times herein mentioned, Defendants knew DeArmaud was using his position of authority within the Defendants' Church to groom and sexually abuse one of its minor active members and invitees, Plaintiff. Yet, Defendants failed to take reasonable steps to protect him.

31. DeArmaud engaged in underclothes groping and fondling with Plaintiff during one of Defendants' youth classes supervised by adult members of the congregation.

32. In or around 1996, the abuse took place during Defendants' Church organized class for minors. DeArmaud would remove Plaintiff from class and force him to perform oral sex.

33. In 1996, Defendants, bishops and/or counselors knew, should have known, reasonably suspected, or were otherwise on notice of the physical and sexual abuse by DeArmaud. Despite the class involving adult leaders and youth members, prospective members, or invitees of the Church in a setting conducive to sexual abuse, proper safeguards and measures of supervision were not in place, thus enabling DeArmaud to egregiously assault Plaintiff. Despite other Church members or supervisors being in close proximity and around Plaintiff as he was abused, DeArmaud was not interrupted nor any action taken after the incident.

34. In or around 1996-1998, DeArmaud would take Plaintiff into a separate room of the Church, either alone or with another minor. DeArmaud would force one at a time to perform oral sex on Him while the other boy watched. He would also force the boys to perform oral sex on each other while. He watched and touched and digitally penetrated the boys. This would last about forty-five minutes.

35. Prior to the sexual abuse, Plaintiff knew DeArmaud held authority in the congregation pursuant to his position or role with Defendants.

36. Upon information and belief (and to the best of Plaintiff's recollection), this Abuse lasted about 1-2 months.

37. While under the care, custody, control, supervision, and protection of Defendants during this bible study class, Plaintiff believed he was safe as this was a group of supervisors and other children with an organized structure.

38. When they were at Joshua's grandma's house, DeArmaud would always sit close to Plaintiff on the couch if no one else was home and would touch his upper thigh and genitals, and upon information and belief, in Riverside County, California.

39. The bible study class had at least one adult member and two teenage members  supervising the class when DeArmaud would routinely remove Plaintiff or Plaintiff along with another from the class for 45 minutes at a time. Upon information and belief, no one asked questions regarding why DeArmaud was removing minors from the bible study class at that frequency or for that duration of time.

40. Plaintiff was forced to keep his abuse a secret as DeArmaud continuously threatened hi. Even years later when Plaintiff traveled to California to visit his grandmother. DeArmaud would repeatedly threaten to kick Plaintiff's family out of the house.

41. Plaintiff was abused repeatedly, with events occurring in California and upon information and belief, including but not limited to within Riverside County, California.

42. DeArmaud was brazen enough to sexually assault Plaintiff despite other adult supervisors of the class being in close proximity to him as well as the presence of additional teenage supervisors

1  that were overseeing and involved in the class.

2  43. Not only had Defendants done nothing to prevent, but they did nothing to stop the sexual

3  abuse of a child attending one of their organized bible study classes.  As a result Plaintiff's

4  experience with Defendants continues to cause extreme pain and suffering to this day.

5  44. Each Stake creates and maintains meticulous sets of membership records which are

6  reviewed and controlled by the Church. Membership records are the Church's way of tracking its

7  members. Members are not allowed access to their records and must receive approval to view

8  them under the supervision of the Bishop. These records include names, addresses, callings, and

9  temple recommendations. The records also contain additional membership information such as new

10  members, members in military service, members who are adopted, children who are born out of

11  wedlock, and records of children of divorced parents. Records are created by the local Bishops,

12  approved by the Stake President, and ultimately transmitted to the Church.

13  45. Records with "annotations" are also maintained by Defendants. Annotations are made

14  where a member's conduct has threatened the well-being of other persons or of the Church as a

15  whole. Annotations are made when a member is disciplined by the Bishop or Stake President for

16  ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective***

17  ***transexual operation, repeated homosexual activities (by adults), or embezzlement of church***

18  ***funds."***  All annotations placed on a member's record are approved by the First Presidency.

19  46. Defendants maintain a pattern and practice of concealing abuse from the authorities, and

20  signals that its members should conceal and/or fail to report abuse so as to keep "the Church from

21  being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August

22  4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct,

23  perpetuating a culture of concealment and encouraging a lack of cooperation among Church

24  members with law enforcement.

25  47. The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the

26  first responsibility of the Church is to assist those who have been abused, and to protect those who

27  may be vulnerable to future abuse." In conjunction with this doctrine, Utah's Supreme Court has

28

COMPLAINT FOR DAMAGES

characterized the Helpline as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.

48. In reality, the Church primarily staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah. Rather than notifying law enforcement or other government authorities when Bishops and other Church clergy members call the Helpline regarding sexual abuse within the Church, Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the bishop not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

49. Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse. In another sexual abuse-related civil lawsuit against the Church and its agents, a Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."

50. In other words, the Church implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for Kirton McConkie attorneys to snuff out complaints and protect the Church and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.

51. Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as a "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allowed DeArmaud to continue completely unhindered and protected,

even in his predatory conduct. Defendants, their agents, and employees, including bishops, counselors, or personnel mentioned herein, and each of them, acted to protect the heinous and unforgiveable acts of DeArmaud, and in such action taken against Plaintiff's innocence and vulnerabilities, were careless, reckless, negligent, consciously disregarding a minor's rights.

52. At all times herein mentioned, Defendants and each of them (1) knew how conducive the Church premises or other locations allowing unsupervised access to youth members, prospective members, and invitees were to sexual abuse and sexual predators, and that sexual predators, such as DeArmaud in particular, had apparent, if not actual, authority within the Church community, on Church premises, and at the aforementioned related locations, while 'acting', either literally and/or figuratively, as members of a priesthood (i.e., bishops, counsellors, elders, etc.) serving an important calling (i.e. Temple Worker); (2) knew that members of the Church priesthood and specifically, DeArmaud, systematically and continuously leveraged any and all authority which the title and association with the Church, conceivably provided Defendant within the community, over followers of their faith, which at all relevant times herein included Plaintiff; and (3) knew that leaving Plaintiff or any youth members, prospective members, and invitees of the Church under the supervision of DeArmaud or within his presence and otherwise unattended, presented a risk of imminent harm to those youth members, prospective members, or invitees, and did harm at least one of them, this Plaintiff.

53. Defendants provided direct access to a large youth community wherein a danger to the community, DeArmaud, wielded power over the Plaintiff.

54. Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that DeArmaud was taking Plaintiff, and potentially others, and committing inappropriate behavior with minor children. Therefore, Defendants knew or should have suspected that DeArmaud conducting inappropriate behavior and conduct with Plaintiff and any other minor children, at the Church's ward and congregation and failed to take any remedial action prior to his sexual assault of Plaintiff.

55. Prior to, during, and after DeArmaud's sexual assault and/or sexual abuse, and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that Perpetrator DeArmaud's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

56. Notwithstanding their knowledge of DeArmaud's prior sexual assaults and/or sexual abuse, and molestation of any other minor children, Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation, or any other persons of the possible risk of further childhood sexual abuse by DeArmaud, limit or supervise his access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiff.

57. Defendants acting through their representative, agents, and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by DeArmaud because, *inter alia*, Defendants:

  a. Negligently hired, supervised, retained, monitored, and/or investigated DeArmaud.

  b. Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

  c. Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law enforcement.

58. Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made DeArmaud's conduct harder to detect including, but not limited to:

  a. Permitting DeArmaud to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that

1    DeArmaud sexually abused and/or sexually assaulted, and molested minor

2    children, including Plaintiff.

3    b.    Permitting DeArmaud's continued and/or unsupervised access to Plaintiff, after

4         Defendants knew or should have known, reasonably suspected, or were otherwise on

5         notice, of DeArmaud's misconduct that created a risk of further childhood sexual

6         assault.

7    c.    Failing to inform or concealing from law enforcement officials of the fact that

8         Plaintiff and others were or may have been sexually assaulted after Defendants knew

9         or should have known, reasonably suspected, or were otherwise on notice, that

10        DeArmaud had, and/or was, engaged in the sexual assault of Plaintiff, thereby

11        creating the circumstance where Plaintiff and others were less likely to receive

12        medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

13   d.    Holding out and affirming DeArmaud to Plaintiff and Plaintiff's parent, other

14        children, and their parents, and to the community as being in good standing and

15        trustworthy.

16   e.    Failing to take reasonable steps, and to implement reasonable policies, procedures,

17        and safeguards to avoid, detect, and report acts of unlawful sexual conduct by

18        employees, including DeArmaud with minor children.

19   f.    Failing to implement a system or procedure to supervise or monitor

20        employees, volunteers, representatives, or agents to ensure that they did not molest

21        or assault minors in Defendants' custody or care, including Plaintiff.

22   59. Defendants, and each of them, negligently, intentionally, maliciously, and/or willfully

23   refused to, and/or did not act reasonably to stop, inhibit, and/or report DeArmaud to law

24   enforcement prior to, during, and/or after their sexual assault and/or sexual abuse, and molestation

25   of Plaintiff, thereby allowing the assault to occur.

26   60. Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal

27   to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to

28

conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

61. Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

62. The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

## FIRST CAUSE OF ACTION: NEGLIGENCE
### (Plaintiff Against All Defendants)

63. Plaintiff re-alleges and incorporates by reference herein each allegation contained

64. herein above as though fully set forth and brought in this cause of action.

65. Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to the minor's parent or had a duty to control the conduct of DeArmaud by way of the special relationship existing between those individuals.

66. Defendants knew or should have known of DeArmaud's misconduct and inappropriate sexual behavior directed by DeArmaud to minor Plaintiff.

67. Despite having knowledge of the misconduct, Defendants failed to take any preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff John or his parents or grandmother regarding the abuse, despite having a legal duty to do so.

68. As a result of Defendants' negligence, Plaintiff was sexually abused by DeArmaud.

69. Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship had with minor Plaintiff, he would not have been subjected to the misconduct aimed against him.

70. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION: NEGLIGENT SUPERVISION OF A MINOR
### (Plaintiff Against All Defendants)

71. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

72. Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, Perpetrator DeArmaud, on Defendants' premises or other locations allowing unsupervised access to youth members, prospective members, and invitees. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor, and protect Plaintiff from known and knowable dangers like Perpetrator DeArmaud, a figure of authority for the Defendants' church community shared with Plaintiff.

73. Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that DeArmaud was positioned to initiate an inappropriate and harassing relationship with Plaintiff and any other minors; allowing DeArmaud unsupervised or insufficiently supervised access to Plaintiff; ignoring and turning a blind-eye to Plaintiff's wellbeing, including any interactions with DeArmaud, so that he could be easily abused; and indeed allowing DeArmaud to sexually harass and abuse the minor Plaintiff during a Church activity.

74. Had Defendants adequately and properly supervised, monitored, and protected its students, Plaintiff would not have been harmed.

- 15 -
COMPLAINT FOR DAMAGES

75. Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

76. Had Defendants, each of them, adequately performed their duty and responsibility, then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment he endured, and which still impacts his life today, as alleged herein.

77. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

78. Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, Perpetrator DeArmaud, on Defendants' premises or other locations allowing unsupervised access to youth members, prospective members, and invitees. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor, and protect Plaintiff from known and knowable dangers like Perpetrator DeArmaud, a figure of authority for the Defendants' church community shared with Plaintiff.

79. Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that DeArmaud was positioned to initiate an inappropriate and harassing relationship with Plaintiff and any other minors; allowing DeArmaud unsupervised or insufficiently supervised access to Plaintiff; ignoring and turning a blind-eye to Plaintiff's wellbeing, including any interactions with DeArmaud, so that he could be easily abused; and indeed allowing DeArmaud to sexually harass and abuse the minor Plaintiff during a Church activity.

80. Had Defendants adequately and properly supervised, monitored, and protected it students, Plaintiff would not have been harmed.

81. Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

82. Had Defendants, each of them, adequately performed their duty and responsibility, then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment he endured, and which still impacts his life today, as alleged herein.

83. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION: SEXUASL ABUSE OF A MINOR
(Plaintiff Against All Defendants)

84. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

85. While Plaintiff was a prospective member and invitee of Defendants' Church, DeArmaud took advantage of his position of authority and trust to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to the acts given his age.

86. Defendants ratified DeArmaud's sexual abuse of Plaintiff because Defendants had or should have had knowledge that he had harassed and potentially harmed Plaintiff, in addition to any other community youth members, yet they intentionally turned a blind-eye and still allowed him to be in a position of power and authority. Defendants did not discipline, denounce, or discharge DeArmaud; as such, they instead accepted and thus ratified his conduct.

87. At all times, Defendants were employees or administrators who were acting within the course and scope of their employment or agency with the Church when they ratified DeArmaud's criminal conduct and adopted it as if it were their own conduct.

88. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

89. In committing the acts described herein, the conduct of DeArmaud, Defendants, their agents, and employees, were despicable, and done with malice, oppression, and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, THE CHURCH and The Corporation.

### FOURTH CAUSE OF ACTION: NEGLIGENT HIRING, RETENTION AND SUPERVISION OF AN UNFIT EMPLOYEE
(Plaintiff Against All Defendants)

90. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

91. Defendants, their agents, and employees, including bishops, clergy, and counselors had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

92. During the time Plaintiff was being sexually abused by DeArmaud Defendants knew or should have known of any complaints of serious misconduct made against DeArmaud, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against DeArmaud.

93. Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise DeArmaud on Defendants' premises.

94. Had Defendants, each of them properly investigated, supervised, trained, and monitored DeArmaud's conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed DeArmaud to continue, unhindered, with any further predatory conduct directed towards underage members of the Church community.

95. Defendants negligently hired, supervised, retained, monitored, and otherwise employed DeArmaud and negligently failed to ensure the safety of a minor prospective member and invitee of the Church, Plaintiff, who was entrusted to Defendants' custody, care, and control.

96. Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including the Perpetrator DeArmaud.

97. Had Defendants, each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their religious leaders, youth leaders, and other agents, Plaintiff would not have been subjected to sexual abuse and other harmful conduct inflicted upon him.

98. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### FIFTH CAUSE OF ACTION: NEGLIGENT FAILURE TO WARN, TRAIN OR EDUCATE
(Plaintiff Against All Defendants)

99. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

100. Defendants, their agents, and employees, each of them, had a duty to warn, train and educate their youth community in its custody, including Plaintiff, on known and knowable dangers posed by its faculty and staff. Defendants, their agents, and employees, also had a duty to warn, train and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing within the youth community.

101. Defendants, their employees and/or agents, each of them, breached their duty to Plaintiff by failing to warn him of known and knowable dangers posed by its faculty and staff, including DeArmaud; by failing to inform and educate him on its sexual harassment policies and the methods to identify, report, and respond to inappropriate sexual harassment by members of the priesthood; and by failing to train its faculty and staff, including DeArmaud, on Defendants' sexual harassment policies.

102. As a direct and legal result of the negligence of Defendants, their employees and/or agents, Plaintiff was groomed, manipulated, and ultimately sexually assaulted and abused by DeArmaud.

103. Had Defendants, their employees, and/or agents fulfilled their duties and responsibilities, Plaintiff would not have been injured and damaged.

104. As a direct and legal result of this negligent conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### SIXTH CAUSE OF ACTION: BREACH OF MANDATORY DUTY: FAILURE TO REPORT <u>SUSPECTED CHILD ABUSE</u>
(Plaintiff Against All Defendants)

105. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

106.     Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

107.     Defendants, acting through their employees, had, or should have had a reasonable suspicion that DeArmaud was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

108.     Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

109.     By failing to report suspected child abuse, Defendants allowed DeArmaud to continue, unhindered, in his abuse of minor children, including Plaintiff.

110.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants the Church and the Corporation, their employees, and/or agents, and each of them, as follows: (i) for an award of special (economic) and general (non-economic) damage according to proof; (ii) Attorney's fees; (iii) For costs of suit incurred herein; and (iv) For such other and further relief as the Court deems just and proper.

# JURY DEMAND

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

DATED: June 11, 2025

*Sara Beller*
_____
Sara Beller, Esq. (Bar No. 316210)
**Dolman Law Group Accident Injury Lawyers, PA**
800 N. Belcher Road
Clearwater, Fl 33765
Tel.: 727.451.6900
Email: sara.beller@dolmanlaw.com


Michael Rose, Esq. (Pro Hac Vice to Be Filed)
Hillary Nappi, Esq. (Pro Hac Vice to Be Filed)
**HACH ROSE SCHIRRIPA &CHEVERIE LLP**
112 Madison Ave, 10th Fl
New York, NY 10016
646-992-8138
mr@hachroselaw.com
hnappi@hrsclaw.com


*Attorneys for Plaintiff*